Jasen, J. (dissenting in part).
We would affirm in Seligson and reverse in Krause. Since the plaintiff -in the Seligson action did not join in the motion for dismissal, any right of control over its cause of action can be held to have been waived by acquiescence. By the same token, plaintiff in Krause, having joined in the motion to dismiss, should be accorded the rights its bankrupt bargained for in the insurance contract.
The issue raised on this appeal is whether interpleader in the circumstances presented will ‘ ‘ prejudice the substantial rights ’ ’ of the plaintiff.
It seems clear to us that it will, and that this prejudice to the plaintiff as trustee of the policyholder far outweighs any interest the insurance company may legitimately assert. What the plaintiff’s bankrupt has contracted for is reimbursement if it suffers a loss — and not subrogation. The right of the insurance company to subrogation is no more than an incidental right by which the insurer may hope to recoup its payment to its insured, but it is not in any way a condition to such payment. The value of the right of subrogation does not even play a significant part, authorities have stated, in the formation of rate schedules.[1] If the insurer should happen not to make good its subrogated claim after it has finally agreed or been compelled to pay its insured, it will only be bearing a risk it was paid to take.
However, if the insured is delayed or hampered in recovering under the policy—or if it loses control of its own right of action against a third party before the insurer has even acknowledged *158 liability, much less paid-—-the insured loses a large part of that for which it paid its premium. It is precisely to avoid having to look, either directly or indirectly, to a tort-feasor for recoupment that the insured buys a casualty or fidelity policy. He needs the insurance proceeds as promptly as possible to replace what he has lost, pay his expenses or get on with his business.
In short, to give the insurer’s interest in subrogation parity with, or priority over, the insured’s interest in prompt recovery is to stand the insurance contract on its head.
Severance of the third-party claim for trial under CPLB 1010 is, in practical terms, an entirely inadequate protection for the insured. It is clear that severance will still leave control of the claim in the hands of the insurer who has not yet even conceded liability. Delay and additional expense are also inevitable. Motions, interlocutory appeals, attendance at examinations before trial in the third-party proceeding, limitations on the time and attention of attorneys are bound to frustrate the policyholder. Third-party procedure — as the language of CPLB 1010 makes clear — is not intended to affect substantial rights of policyholders in this way.
We disagree that Ross v. Pawtucket Mut. Ins. Co. (13 N Y 2d 233) should be limited to automobile collision cases. To adopt such a rationale is to vary the rule of law with the size of the stake involved. We are dealing here, as we did in Ross, with the limited class of cases in which an insured sues his insurance company on the policy, and the insurer, while resisting payment on the policy, seeks to implead a third party by right of subrogation. Our decision need not extend to the many other possible categories of third-party claims in which the consequences of impleader practice might be different.
Nor would dismissal here violate the spirit of CPLB 1007. That section must be read together with the closely related CPLB 1010, which does not limit the plaintiff’s procedural relief to severance of a third-party complaint for trial; it states explicitly that “ [t]he court may dismiss a third-party complaint without prejudice ” and that “ [i]n exercising its discretion, the court shall consider whether the * * * [third-party action] will unduly delay the determination of the main action or prejudice the substantial rights of any party.” (Emphasis supplied.)
*159 In Krause v. American Guar. & Liab. Ins. Co.: Judges Burke, Scileppi, Bergan and Breitel concur with Judge Keating ; Judge Jasen dissents and votes to reverse in an opinion in which Chief Judge Fuld concurs.
In Seligson v. Fidelity & Cas. Co. of N. Y.: Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Orders affirmed, with costs. Questions certified answered in the negative.

. 2 Richards, Insurance (5th ed., 1952), § 183, p. 654, quoting Patterson. Essentials of Insurance Law (1935), p. 122.